*714 ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.
This matter arises from a petition for consent discipline filed jointly by the Office of Disciplinary Counsel (“ODC”) and respondent, Rhea H. Woods, an attorney licensed to practice law in the State of Louisiana, but currently on interim suspension.[1]
UNDERLYING FACTS
These proceedings are based on two separate sets of formal charges, as well as separate files investigated by the ODC. The facts, as stipulated to by respondent and the ODC, are as follows:

Case No. 00-DB-095

Count I-Butler Matter

Respondent was retained to represent a succession estate involved in pending litigation. Subsequently, respondent failed to communicate with her clients, as well as refused to respond to her clients’ written requests for information.
After receiving a complaint in the matter, the ODC requested respondent provide information regarding the matter. Respondent failed to answer to the ODC’s requests for information, requiring it to issue a subpoena compelling her to appear at a deposition.
| ?Pount II-Lombard Matter
In February, 1997, Wanda Lombard retained respondent for $600 to represent her in a civil matter. Respondent neglected the legal matter and failed to communicate with her client.
After receiving a complaint in the matter, the ODC requested respondent provide information regarding the matter. Respondent failed to answer to the ODC’s requests for information, requiring it to issue a subpoena compelling her to appear at a deposition.

*715
Count Ill-Hunter Matter

Respondent had provided Dr. Michael S. Hunter with letters of guarantee for payment, in exchange for the rendering of medical treatment to several of her clients. Later, respondent settled many of the clients’ cases, but neglected to provide payment to Dr. Hunter.
After receiving a complaint in the matter, the ODC requested respondent provide information regarding the matter. Respondent failed to answer to the ODC’s requests for information, requiring it to issue a subpoena compelling her to appear at a deposition.

Count IV-Robinson Matter

Respondent settled a case on behalf of her client, Terri Lynn Robinson.[2] Although respondent withheld funds to pay one of her client’s medical providers, respondent deposited the funds in her office operating account and neglected to provide payment.
IsAfter receiving a complaint in the matter, the ODC requested respondent provide information regarding the matter. Respondent failed to answer to the ODC’s requests for information, requiring it to issue a subpoena compelling her to appear at a deposition.

Count V-Broum Matter

Respondent permitted her husband, Dwayne Lockett, who is not an attorney, to meet in her office with potential clients seeking attorney representation. In one instance, Inga Washington Brown and her husband met with Mr. Lockett in July, 1997. At that time, Mr. Lockett misrepresented he was an attorney and respondent’s associate. Relying on Mr. Lockett’s misrepresentation, Mrs. Brown signed a retainer agreement hiring respondent and paid Mr. Lockett a $265 retainer fee.
Subsequently, respondent failed to undertake any action on behalf of Mrs. Brown, nor did she communicate with her. In January, 1999, respondent forwarded a letter to Mrs. Brown terminating the representation. Although respondent enclosed pleadings she had drafted on Mrs. Brown’s behalf (but had never filed), she neglected to return the remainder of Mrs. Brown’s file.

Case No. 01-DB-ll

Count I-McMillon Matter

Lloyd McMillon retained respondent for $750 to institute bankruptcy proceedings on his behalf. Over the course of the following year, respondent neglected to take any legal action and failed to communicate with her client. Eventually, respondent turned the matter over to another attorney to handle, but retained the fee.

\ t/Count II-Howard Matter

Donald and Jeanne Howard gave respondent a check for $30,000 to purchase property from a succession. Rather than purchasing the property as instructed, respondent converted the funds after forging signatures on the cash sale and the endorsement on the check. As a result, the property was seized and sold.
■ The Howards retained new counsel, who filed a complaint with the ODC regarding the matter. Ultimately, respondent provided full restitution to the Howards.

Count Ill-Espadron Matter

Linda Espadron retained respondent to represent her interests in a matter which involved the sale of succession property. Specifically, $52,000 from an auction of succession property had been placed in the registry of the court. Subsequently, respondent and her husband withdrew the funds without her client’s knowledge or permission, forged the client’s signature *716 and converted the funds. Ms. Espadron filed a complaint with the ODC advising of respondent’s misconduct.[3]

Investigative Files

Investigative File No. 13501-Parker Matter

In 1995, Estelle Marie Parker retained respondent to represent her in a civil matter. Subsequently, respondent neglected to communicate with her client.

\ investigative File No. 0013667-Cruse Matter

Respondent represented Archie and Margaret Cruse in a civil matter. Subsequently, respondent failed to account for and turn over $38,000 in settlement funds owed to her clients.
DISCIPLINARY PROCEEDINGS

Formal Charges/Petition for Consent Discipline

After investigation, the ODC filed five counts of formal charges in case no. 00-DB-095.' Respondent filed a response denying the allegations of misconduct. While that matter was pending, the ODC file a second set of three counts of formal charges in case no. 01-DB-011..
Prior to a hearing on these charges, respondent and the ODC entered into a joint petition for consent discipline. In the petition, respondent stipulated to the allegations of the formal charges, as well as the other matters which were the subject of the ODC’s investigative files. Respondent conceded her actions violated the Rules of Professional Conduct, namely, Rules 1.3 (lack of diligence), 1.4(a) (failure to communicate), 1.5(f)(6) (failure to refund earned fees or place funds in trust when dispute arises), 1.15(a) (failure to keep client and third party funds separate from the lawyer’s own property), 1.15(b) (failure to promptly deliver funds or property owed to a client or third party and failure to render a full accounting upon request), 1.16(d) (failure to protect client interests upon termination of representation), 5.5(b) (assisting a nonmember of the bar engage in the unauthorized practice of law), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.3 (failure to report professional misconduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(g) (failure to cooperate with the ODC).
|fiAs aggravating factors, the parties alleged dishonest motive, multiple offenses, bad faith obstruction of the disciplinary process and substantial experience in the practice of law. In mitigation, the parties stipulated that, although respondent accepts responsibility for her misconduct, some of the events subject of the proceedings arose from the conduct of respondent’s husband. The parties alleged Mr. Lockett betrayed respondent’s trust both personally and professionally on numerous occasions, including but not limited to, the forging of respondent’s name. The parties contend, after learning the extent of her husband’s misconduct, respondent filed for divorce alleging severe mental and physical abuse.
As a sanction for her misconduct, respondent and the ODC proposed respondent be disbarred from the practice of law.

Recommendation of the Disciplinary Board

Because the parties stipulated to the facts and misconduct, the board’s sole focus was whether disbarment was an appropriate sanction. The board found that *717 respondent knowingly and intentionally violated duties owed to her clients, the public, the legal system and the profession, which resulted in significant injury. Specifically, it pointed out that respondent converted $30,000 from the Howards, $52,000 from Ms. Espadron and $38,000 from the Cruses. It noted that only the Howards were repaid and, even in their case, they lost the property they had intended to purchase. The board maintained respondent’s misconduct relative to the Lombard, Hunter, Robinson, Brown, McMillon and Parker matters established a pattern of neglect, and that her failure to act delayed the resolution of her clients’ cases. Moreover, it stated that her failure to pay third party medical providers placed her clients at financial risk. The board found respondent’s failure to properly supervise her staff enabled her non-lawyer husband to engage in the unauthorized practice of law.
17As aggravating factors, the board recognized multiple offenses, dishonest motive and pattern of misconduct. In mitigation, the board noted respondent’s personal problems are supported by the stipulation of facts, insofar as her husband deceived her and betrayed her trust for his own personal gain.
Relying on the ABA’s Standards for Imposing Lawyer Sanctions[4] and jurisprudence from this court, the board concluded disbarment was appropriate for the various types of misconduct committed by respondent. Accordingly, the board recommended the proposed consent discipline be adopted and that respondent be disbarred from the practice of law.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
DISCUSSION
Although this matter arises from a petition for consent discipline, Supreme Court Rule XIX, § 20(B) provides that the extent of discipline to be imposed is subject to review. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
^Respondent's actions are serious in nature. Her neglect of her clients’ legal matters and failure to communicate with them resulted in undue delays and the loss of property interests. Most disturbing, however, is respondent’s conversion of client funds. In Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), we set forth the elements which make disbarment appropriate in a conversion case:
In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his *718 client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings. She has deprived her clients of their funds for a significant period of time. These actions convincingly demonstrate respondent lacks the moral fitness to engage in the practice of law.
All of these elements are present in the instant case. Respondent clearly acted in bad faith and intended a result inconsistent with her clients’ interests. She committed forgery in connection with the conversion. The magnitude of the deprivation of funds, and resulting inconvenience to respondent’s clients is great. Finally, respondent has only made restitution to one client, leaving her other victims uncompensated.
Thus, the baseline sanction for respondent’s misconduct is clearly disbarment. Several aggravating factors are present, including a pattern of misconduct, multiple offenses, dishonest and selfish motive and substantial experience in the practice of law. The sole mitigating factor, personal problems, is insufficient to justify a deviation from the sanction of disbarment.[5]
19Under these circumstances, we find disbarment is the only appropriate sanction. Accordingly, we will accept the board’s recommendation and disbar respondent from the practice of law.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record filed herein, it is ordered that the name of Rhea H. Woods be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked, retroactive to the date of her interim suspension. Respondent is ordered to make full restitution to her victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
TRAYLOR, J., would reject consent discipline.

. On August 29, 2001, this court placed respondent on interim suspension for the misconduct which is the subject of the instant disciplinary proceeding. In re: Woods, 01-2396 (La.8/29/01), 795 So.2d 1152.

. In the record, Ms. Robinson is also referred to as Terri Robinson Prevost.

. While not subject of formal charges, the ODC also received a disciplinary complaint from a licensed attorney advising of respondent’s misconduct relative to the Espadron matter.

. Standard 4.41 provides disbarment is generally appropriate when a lawyer knowingly fails to perform services for a client or engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client. Standard 7.1 provides disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

. While we recognize some of the misconduct may have resulted from activities of respondent’s husband, the fact remains that respondent bears the ultimate responsibility for actions affecting her clients. Moreover, much of respondent’s misconduct, including her neglect of her clients’ cases, failure to communicate with them and failure to properly terminate the representations, occurred independent of her husband’s actions.