*553 ATTORNEY DISCIPLINARY PROCEEDINGS
J^PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Rhea H. Woods, a disbarred attorney.
PRIOR DISCIPLINARY HISTORY
Respondent was admitted to the practice of law in Louisiana in 1989. Her first disciplinary infraction occurred in 2001, when she was admonished by the disciplinary board for failing to cooperate in a disciplinary investigation.
A far more serious disciplinary proceeding against respondent came before this court in 2003. That proceeding involved numerous acts of professional misconduct committed by respondent against several different clients beginning in 1995 and continuing through 1999.[1] Among other things, respondent’s actions involved three instances of conversion of client funds.
Following the filing of formal charges, respondent and the ODC filed a joint petition for consent discipline in this court, seeking respondent’s disbarment. This court granted the petition and disbarred respondent. In re: Woods, 02-2615 (La.1/31/03), 841 So.2d 713 (“Woods 7”).
| ^Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
UNDERLYING FACTS
In November 1998, respondent negotiated a $102,500 settlement on behalf of two minors, Brandon Antoine and Brinay Turner, arising out of the wrongful death of their mother. Respondent indicated that she would invest the settlement funds for the benefit of the minors, but she never obtained a court order authorizing the disbursement of the funds. Instead, she retained the funds and converted them to her own use.
In March 2002, respondent’s clients, through their new attorney, filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint. The minors’ new attorney also filed a lawsuit against respondent. In response to the lawsuit, respondent filed bankruptcy, listing the minors and their guardians as her only creditors.
DISCIPLINARY PROCEEDINGS
On June 11, 2003, the ODC filed one count of formal charges against respondent, alleging that her conduct violated Rules 1.15(a)(b) (safekeeping property of clients or third persons) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. Respondent was personally served with the formal charges on June 25, 2003. She failed to answer or otherwise reply to the formal charges. Pursuant to Supreme Court Rule XIX, *554 § 11(E)(3), the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence. No formal hearing was held, but the parties were[3given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Recommendation

Based on the deemed admitted facts, the hearing committee found respondent violated Rules 1.15(a) and (b) of the Rules of Professional Conduct as charged in the formal charges. As to Rule' 8.4(c), the committee made a more generalized finding, stating that “[rjespondent violated Rule 8.4 by engaging in conduct that was essentially criminal and that reflected adversely on her honesty, trustworthiness and fitness as a lawyer.”
The committee determined that respondent violated duties owed to her clients and the legal profession. Respondent acted intentionally and caused injury to her clients. Considering the ABA’s Standards for Imposing Lawyer Sanctions, the baseline sanction is disbarment.
As aggravating factors, the committee recognized respondent’s prior disciplinary offenses,[2] dishonest or selfish motive, a pattern of misconduct, vulnerability of the victims, and indifference to making restitution. The committee found no mitigating factors.
Under these circumstances, the committee recommended respondent be disbarred.

Disciplinary Board Recommendation

The disciplinary board found that the deemed admitted facts in the record support the conclusion that respondent violated the Rules of Professional Conduct as charged in the formal charges. Based on these facts, the board determined that | ¿respondent violated duties owed to her clients and to the public. It concluded she failed to safeguard her clients’ settlement funds, failed to maintain her personal honesty and integrity and acted intentionally when she converted her clients’ settlement funds, thus causing them actual harm. Under these circumstances, the board concluded the appropriate baseline sanction for respondent’s misconduct is disbarment.
As aggravating factors, the board recognized respondent’s dishonest or selfish motive, a pattern of misconduct, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. The board found no mitigating factors.
Following the reasoning of this court in Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991), the board observed that the instant misconduct occurred within the same time frame as the misconduct at issue in Woods I and therefore, the sanction should be determined based on the sanction which would have been imposed if both cases had been before the court simultaneously. Had this court considered the instant charges together with the charges in Woods I, the board speculated that we may have imposed permanent disbarment. In support, the board relied on Guideline 1 of the permanent disbarment guidelines found in Supreme Court Rule XIX, Appendix E, which provides for permanent disbarment when an attorney engages in “repeated or multiple instances of intentional conversion of client funds with substantial harm.” The board observed that if the conversion *555 of client funds in the instant case had been considered together with the three instances of conversion of client funds in Woods I, it is likely that this court would have imposed the harsher sanction of permanent disbarment.
| ..¡Accordingly, the board recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
In the instant matter, respondent did not answer the formal charges. As a result, the factual allegations contained within the formal charges were deemed admitted by operation of Supreme Court Rule XIX, § 11(E)(3). We conclude these deemed admitted facts, combined with other evidence in the record, is sufficient to support the conclusion that respondent converted and failed to account for client funds in violation of Rule 1.15 and engaged in dishonest or fraudulent conduct in violation of Rule 8.4(c). See In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
Having found professional misconduct, we now turn to consideration of the appropriate sanction for respondent’s misconduct. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the pub-lie, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each ease and the seriousness of the offenses involved, considered in light of any aggravating and 1 ^mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s willful conversion of a substantial amount of funds belonging to her minor clients, combined with her fraudulent representation that she would invest these funds for the benefit of her minor clients, is among the most serious professional misconduct a lawyer can commit. The baseline sanction for such misconduct is unquestionably disbarment. Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986).
Nonetheless, the disciplinary board urges that we not consider the instant misconduct in isolation, but address it in conjunction with the misconduct in Woods I, which occurred within the same general time frame. The concept of simultaneously considering prior misconduct with new charges based on conduct occurring at the same time as earlier misconduct originated in our opinion in Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470, 471 n. 2 (La.1991), in which we explained:
Since the attorney-respondent cannot control the timing of the institution of disciplinary proceedings, it is generally inappropriate to disbar a previously disbarred attorney an additional time when the violations at issue occurred before or concurrently with the violations which resulted in the initial disbarment. When a second disciplinary proceeding against an attorney involves misconduct which occurred during the same time period as the first proceeding, the overall discipline to be imposed should be *556 determined as if both proceedings were before the court simultaneously. See 1 Lawyers’ Manual on Professional Conduct 466 (1984); Matter of Thompson, 492 A.2d 866 (D.C.App.1985).
In Chatelain, we were concerned that it would be potentially unfair for a lawyer to receive a greater sanction simply because of the timing of the prosecution. However, as the jurisprudence has evolved, we have also recognized that the lawyer should not benefit in cases where it is obvious the cumulative effect of the new-Iyjcharged7 misconduct and the prior misconduct would have caused us to impose a greater sanction had we been aware of that misconduct at the time we rendered our initial judgment. See, e.g., In re: Holley, 03-1366 (La.10/3/03), 856 So.2d 1197 (“[h]ad we considered the instant misconduct together with the misconduct in Holley I, it is likely we would have imposed a more severe sanction, probably in the range of eighteen months, with some period of deferral and probation.”). In short, our overriding consideration has been to determine the appropriate overall sanction for the lawyer’s misconduct, ignoring any distortions which may be caused by the timing of the filing of formal charges.
Applying that reasoning to the matter sub judice, we recognize that the instant charge, based on misconduct which occurred in 1998, is part of the continuing series of professional breaches by respondent spanning the period between 1995-1999, which we first addressed in Woods I. To consider this charge in isolation from the similar charges in Woods I would prevent us from recognizing respondent’s pattern of serious misconduct. Accordingly, we find it appropriate to consider the instant charges together with the charges at issue in Woods I and determine an appropriate sanction as if both cases were before the court simultaneously.
In Woods I, we found respondent engaged in three instances of conversion, in the amount of $30,000, $52,000 and $38,000. The sole mitigating factors were partial restitution and personal problems during the time of the misconduct.
In the instant proceeding, the amount of funds converted (in excess of $100,000) is much greater than the funds converted from any single client in Woods I. The present victims are in a more vulnerable position than the victims in Woods I, as the victims in the instant case are minors deprived of a recovery stemming from the wrongful death of their mother. Respondent has not made any effort at restitution; [sto the contrary, she has sought bankruptcy protection in an effort to shield herself from the payment of restitution.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. Guideline 1 applies to “repeated or multiple instances of intentional conversion of client funds with substantial harm.” The instant charge of conversion combined with the three prior instances of conversion demonstrates respondent willfully engaged in repeated or multiple instances of conversion of client funds resulting in substantial harm to her clients. While all instances of conversion are serious, respondent’s calculated decision to victimize her minor clients by converting funds recovered based on their mother’s wrongful death is particularly reprehensible and demonstrates a clear lack of moral fitness on the part of respondent. Had we been aware of the instant misconduct at the time we considered Woods I, we would have imposed permanent disbarment.[3]
*557 Accordingly, we will accept the disciplinary board’s recommendation and permanently disbar respondent from the practice of law in Louisiana.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Rhea H. Woods, Louisiana Bar Roll number 19840, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be 19permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to provide complete accountings and full restitution to her victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The misconduct forming the basis for the instant proceeding arose during this same general time frame, as will be discussed in more detail later in our opinion.

. As stated earlier, in addition to her disbarment in Woods I, respondent was also admonished by the disciplinary board in 2001 for failing to cooperate in a disciplinary investigation.

. Because Woods I arose as a petition for consent discipline, we would have rejected that petition as unduly lenient, with the clear implication that permanent disbarment was the appropriate sanction.