*63 ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respon *64 dent, Arthur L. Carter,[1] a disbarred attorney.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history.
In 2001, respondent and the ODC filed a joint petition for interim suspension, asserting that there was probable cause to believe that respondent, among other things, commingled and converted client funds. We granted the motion and placed respondent on interim suspension effective October 5, 2001. In re: Carter, 01-2502 (La.10/5/01), 797 So.2d 49.
Subsequently, respondent filed a petition for consent discipline. In that petition, he stipulated that during 1997 and 1998, he converted settlement funds belonging to two clients. As a sanction, he sought disbarment. In October 2002, we accepted the petition for consent discipline and disbarred respondent. In re: Carter, 02-2066 (La.10/14/02), 829 So.2d 1023 (“Carter I”).
UNDERLYING FACTS
Count I — The Narcisse Matter
Respondent was retained to represent Wanda Narcisse and her two children in a personal injury matter arising out of a December 1997 automobile accident. Respondent communicated with his client about the case on a regular basis until the beginning of 2003, when he told Ms. Nar-cisse that he was taking a leave from his practice due to illness. At that time respondent also informed Ms. Narcisse that he was still waiting to hear from State Farm Insurance Company concerning the personal injury claims. Respondent did not tell Ms. Narcisse that he had been on interim suspension since October 2001, nor that he was disbarred in October 2002.
In February 2003, Ms. Narcisse learned from State Farm’s counsel that the personal injury case had long been settled. Ms. Narcisse subsequently discovered that in November 1998, respondent received $1,400 in settlement of her minor son’s personal injury claim, and that he received $7,723.21 in January 2001 in settlement of her claim. Ms. Narcisse did not receive these funds.[2]
Count II — The Brady Matter
In March 1997, respondent was retained to represent Herman Brady in a personal injury matter. In October 2002, respondent mailed Mr. Brady a cashier’s check in the amount of $2,557.52, with the notation “full & final settlement,” along with a handwritten note thanking Mr. Brady for his “prayers and patience.” No accounting or other explanation was provided.
|sMr. Brady attempted to contact respondent to obtain information about the settlement and distribution of funds, to no avail. In November 2002, Mr. Brady filed a complaint against respondent with the ODC. The ODC subsequently learned that State Farm settled Mr. Brady’s case in March 1998 for $3,635. Mr. Brady informed the ODC that he did not authorize respondent to settle his personal injury *65 claim or endorse the settlement check on his behalf.
Count III — The Adams Matter
In July 1999, respondent was retained to represent Jacqueline Adams in a personal injury matter. In October 2002, respondent mailed Ms. Adams a cashier’s check in the amount of $2,598, with the notation “full & final settlement,” along with a handwritten note thanking Ms. Adams for her “prayers” and her “patience.” No accounting or other explanation was provided.
Ms. Adams attempted to contact respondent to obtain information about the settlement and distribution of funds, but was unsuccessful. In February 2003, Ms. Adams filed a complaint against respondent with the ODC. The ODC subsequently learned that Scottsdale Insurance Company settled Ms. Adams’s case in May 2000 for $6,904.[3]
DISCIPLINARY PROCEEDINGS
After investigation, the ODC filed three counts of formal charges against respondent, alleging that his conduct in the Nar-cisse, Brady, and Adams matters violated Rules 1.4 (failure to communicate with a client), 1.15 (safekeeping property |4of clients or third persons), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
Respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Recommendation

The hearing committee determined that respondent settled his clients’ cases without authority and failed to inform his clients that he had been suspended from practice. It concluded this conduct violated Rules 1.4, 1.15, and 8.4(c) of the Rules of Professional Conduct. As a sanction, the committee recommended that respondent be permanently disbarred.

Disciplinary Board Recommendation

The disciplinary board found the record supports the hearing committee’s findings. In the Narcisse matter, the board found respondent told Ms. Narcisse that her case was still pending when it had been settled two years earlier. He then converted the settlement proceeds due to Ms. Narcisse and her minor son, totaling more than $9,000. In the Brady and Adams matter, the board found respondent | swaited more than two years to distribute settlement funds to Mr. Brady and Ms. Adams, and failed to provide them with settlement statements.[4] It also found he failed to communicate with his clients about their cases and about his status as an attorney.
In determining a sanction, the board found respondent intentionally violated duties owed to his clients and the public. *66 It concluded Mr. Brady and Ms. Adams were harmed because they were deprived of their settlement funds for an extended period of time; Ms. Narcisse and her son have never received their funds.
Citing this court’s opinion in Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991), the board observed that some of respondent’s misconduct in the instant matter occurred in the same time frame as the misconduct at issue in Carter I. Specifically, it found that half of the current formal charges (the harm to Ms. Narcisse’s son and to Mr. Brady) would likely be encompassed by the Carter I disbarment, with the result that respondent would be adjudged guilty of additional violations to be considered in the event he applied for readmission. However, the board determined the other half of the formal charges (the harm to Ms. Narcisse and to Ms. Adams) involved conduct occurring between 2000-2001, outside of the 1997-1998 time frame of Carter I. Therefore, it concluded this conduct was not encompassed by the Carter I disbarment.
The board found the baseline sanction for respondent’s misconduct is disbarment. Further, citing this court’s opinion in In re: Woods, 04-1543 (La.10/29/04), 885 So.2d 551, the board found it appropriate to consider the instant misconduct together with the Carter I misconduct in fashioning a sanction. Looking | ñto the permanent disbarment guidelines, the board found respondent’s conversion of the funds of two clients in Carter I, followed by his conversion of Ms. Narcisse’s settlement funds in the instant formal charges, constituted “repeated or multiple instances of intentional conversion of client funds with substantial harm” for purposes of Guideline 1. Accordingly, the board recommended that respondent be permanently disbarred. The board also recommended that respondent be ordered to make restitution to Ms. Narcisse and her son, and be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions 17that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
Based on the deemed admitted facts and other evidence in the record, we find respondent violated the Rules of Professional Conduct as charged. The undisputed evidence establishes that respondent settled personal injury cases for his clients and then failed to promptly turn over the *67 settlement funds to them. One of the clients at issue, Wanda Narcisse, is owed approximately $9,000, less any medical expenses and attorney’s fees due for both herself and her minor son, but to date she has not received any settlement funds from respondent. In two other instances, respondent repaid the clients the funds they were due, totaling approximately $5,100, but there was a delay of more than two years in the disbursement of the funds.
Having found violations of the Rules of Professional Conduct, we now turn to consideration of the appropriate sanction for respondent’s misconduct. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
As a threshold issue, we must address the disciplinary board’s finding that a portion of the formal charges in this case encompasses conduct which occurred at the same time as the conduct forming the basis of Carter I. In Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470, 471 n. 2 (La.1991), we stated:
1 sSince the attorney-respondent cannot control the timing of the institution of disciplinary proceedings, it is generally inappropriate to disbar a previously disbarred attorney an additional time when the violations at issue occurred before or concurrently with the violations which resulted in the initial disbarment. When a second disciplinary proceeding against an attorney involves misconduct which occurred during the same time period as the first proceeding, the overall discipline to be imposed should be determined as if both proceedings were before the court simultaneously. See 1 Lawyers’ Manual on Professional Conduct 466 (1984); Matter of Thompson, 492 A.2d 866 (D.C.App.1985).
In In re: Woods, 04-1543 (La.10/29/04), 885 So.2d 551, we revisited Chatelain, explaining that our overriding concern is to determine the appropriate overall sanction for the attorney’s misconduct:
In Chatelain, we were concerned that it would be potentially unfair for a lawyer to receive a greater sanction simply because of the timing of the prosecution. However, as the jurisprudence has evolved, we have also recognized that the lawyer should not benefit in cases where it is obvious the cumulative effect of the newly-charged misconduct and the prior misconduct would have caused us to impose a greater sanction had we been aware of that misconduct at the time we rendered our initial judgment.
⅝ ⅝ $
In short, our overriding consideration has been to determine the appropriate overall sanction for the lawyer’s misconduct, ignoring any distortions which may be caused by the timing of the filing of formal charges.
Applying that reasoning to the matter sub judice, we recognize that the instant charge, based on misconduct which occurred in 1998, is part of the continuing series of professional breaches by respondent spanning the period between 1995-1999, which we first addressed in Woods I. To consider this charge in isolation from the similar charges in Woods I would prevent us from recognizing respondent’s pattern of serious *68 misconduct. Accordingly, we find it appropriate to consider the instant charges together with the charges at issue in Woods I and determine an appropriate sanction as if both cases were before the court simultaneously.
19We find the Woods analysis applies with equal force in the instant case. In Carter I, we determined respondent improperly negotiated settlement checks and converted settlement proceeds belonging to two clients. We now find that during the same time, respondent engaged in two additional acts of conversion of client funds belonging to Ms. Narcisse’s son and to Mr. Brady. Respondent’s pattern of misconduct continued into 2000, when he converted funds belonging to Ms. Adams, and 2001, when he converted funds belonging to Ms. Narcisse.
Taken as a whole, therefore, respondent’s misconduct consists of six discrete instances of conversion of client funds. In all instances, respondent acted in bad faith, as he did not keep his clients advised of the status of their cases. He committed acts of fraud and forgery by negotiating settlement checks without his clients’ knowledge or permission. Although respondent made tardy restitution to some of his clients, his actions caused them actual and substantial harm by depriving them of their funds for significant periods of time. Applying the reasoning of Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), it is beyond dispute that the baseline sanction for this misconduct is disbarment.
The sole remaining issue presented for our consideration is whether respondent’s misconduct, when taken as a whole, is so egregious that he should be permanently prohibited from reapplying for admission to the practice of law. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment.
| ¶(¡Guideline 1 suggests permanent disbarment is appropriate when the attorney engages in “repeated or multiple instances of intentional conversion of client funds with substantial harm.” Respondent’s conduct, taken as a whole, clearly falls within the scope of this guideline. Respondent engaged in a pattern of fraud and theft over a period of several years and injured multiple clients. This demonstrates with perfect clarity that he lacks the fundamental moral fitness required of attorneys admitted to the bar of this state. We can conceive of no instance under which we would readmit respondent to the practice of law. Accordingly, he must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Arthur L. Carter, also known as A. Lloyd Carter, Louisiana Bar Roll number 17508, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to provide a complete accounting and full restitution to Wanda Narcisse and her son, Henry Bennett. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, *69 with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
CALOGERO, C.J. concurs in part and dissents in part and assigns reasons.

. Respondent's name is listed as "A. Lloyd Carter” on the bar rolls of this court.

. Ms. Narcisse also claimed that her daughter, Toshiba Narcisse, was involved in the accident and that she did not receive her settlement funds. The evidence shows that a check from State Farm dated November 13, 1998 in the amount of $5,000 was made payable to Toshiba Narcisse and purportedly endorsed by Toshiba, as she was a major at the time. Toshiba Narcisse did not join her mother's complaint nor did she provide any testimony that she had not been paid by respondent.

. While the formal charges allege that Ms. Adams did not authorize respondent to settle her personal injury claim, Ms. Adams admitted in a sworn statement that respondent did discuss settlement options and dollar amounts with her.

. The board’s findings indicate that both Mr. Brady and Ms. Adams ultimately received the amounts they were properly due from their settlements, taking into account medical expenses and a one-third contingent fee.