*973
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 11 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Robert L. Hackett, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.
 
 [1]
 

 FORMAL CHARGES
 

 Counts I & II
 

 In November 1995 and February 1998, respondent executed commercial guarantees in favor of Advocate Financial, LLC (“Advocate”), guaranteeing payment of various loans Advocate made to respondent and several of his clients. One such client, Pamela Doran, hired respondent in 1996 to represent her in a personal injury
 
 *974
 
 matter. In July 1996, Ms. Doran executed a promissory note and security agreement in favor of Advocate to finance the costs of the litigation. In 2000, Ms. Doran refinanced her loan with Advocate by signing a $38,000 promissory note, and granting Advocate a security interest in the proceeds of her lawsuit. Respondent guaranteed payment of the promissory notes executed by Ms. Doran.
 

 |2In October 2002, Advocate filed suit against respondent to collect on various loans which had not been repaid as agreed. At the time, respondent had two unpaid business loans totaling $107,282 plus interest, and six past-due loans to various clients, including Ms. Doran, totaling $121,710 plus interest. In September 2003, the trial court rendered summary judgment in favor of Advocate in the total principal amount of $228,991.91, plus accrued interest.
 

 In March 2004, Ms. Doran’s litigation concluded with a judgment in her favor. The insurance company issued a check in the amount of $264,616.26, made payable to Ms. Doran and respondent. However, respondent did not disburse any portion of the settlement proceeds to Ms. Doran, nor did he pay Ms. Doran’s loans. Instead, respondent falsely informed Ms. Doran that her funds had been seized by Advocate. Respondent neither accounted for nor explained what he did with the $264,616.26 he received in satisfaction of the judgment rendered in favor of Ms. Doran. Additionally, respondent did not cooperate with the insurance company’s counsel or Advocate in resolving issues related to litigation expenses.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.15(a)(c)(d)(e) (safekeeping property of clients or third persons), 1.16 (obligations upon termination of the representation), 4.1 (truthfulness in statements to others), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) of the Rules of Professional Conduct.
 

 |sCount III
 

 Michael and Elizabeth Smith hired respondent to represent them in a legal matter which settled the day of trial. Thereafter, a fee dispute arose between respondent and the Smiths’ previous attorneys, Timothy Falcon and Stephen Wiles. Eventually, Mr. Falcon and Mr. Wiles filed suit against respondent, and a $65,907.69 judgment was rendered in favor of Mr. Falcon and Mr. Wiles. On August 4, 2003, respondent appealed that judgment. On August 9, 2004, respondent filed for bankruptcy. In 2006, the attorneys for Mr. Falcon and Mr. Wiles filed a joint motion for limited relief from the automatic stay imposed by the bankruptcy court. This motion was granted and the bankruptcy court lifted the stay to allow respondent to complete the appeal; thereafter, the parties were ordered to return to the bankruptcy court to determine whether the civil judgment against respondent was dischargeable.
 

 In July 2006, Mr. Falcon and Mr. Wiles filed a motion to dismiss respondent’s appeal for nonpayment of costs. In response, respondent filed a motion to declare moot the motion to dismiss appeal, in which he falsely stated that the civil matter remained stayed pursuant to federal constitutional law, and that the matter was fixed for trial in the bankruptcy court. At the time respondent filed the motion, the order lifting the automatic stay for the
 
 *975
 
 purpose of the appeal of the civil judgment remained in effect. Respondent made similar misrepresentations in a letter sent to the trial court in October 2006 and in an ex parte motion requesting that the trial court record be prepared and forwarded to the bankruptcy court. The trial court subsequently found respondent in contempt of court for multiple instances of misrepresentation and for an ex parte communication to the court.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 3.1 (meritorious claims and contentions), |43.2 (failure to make reasonable efforts to expedite litigation), 3.3(a) (candor toward the tribunal), 3.3(d) (in an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse),
 
 [2]
 
 3.4 (fairness to opposing parties and counsel), 8.4(a), 8.4(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
 

 Count TV
 

 In January 2002, Jeffrey Lazaro hired respondent to pursue a workers’ compensation claim. Between 2004 and 2007, respondent received five workers’ compensation checks issued by Louisiana Insurance Guaranty Association on behalf of Mr. Lazaro, totaling $70,310.47. Mr. Lazaro was paid the • proceeds of two checks which totaled $11,732.93, less $4,500 in attorney’s fees withheld by respondent. However, Mr. Lazaro did not receive the proceeds of the other checks, and was not informed of the payments received by respondent. In response to numerous inquiries from Mr. Lazaro, respondent blamed opposing counsel for delaying resolution of the matter. Additionally, respondent did not maintain the funds in a client trust account and took fees in excess of the statutory limitation without approval of the workers’ compensation judge. In 2009, Mr. Lazaro made a claim for restitution from the Louisiana State Bar Association’s Client Assistance Fund.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a) (scope of the representation), 1.3,1.4 (failure to communicate with a client), 1.5(a)(b)(c) (fee arrangements), 1.15, 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
 

 |
 
 BCount V
 

 In March 2005, Kyle Kettles hired respondent to pursue a workers’ compensation claim. From March 2005 to October 2007, respondent received weekly payments of $438 from Chubb Insurance (“Chubb”), from which he periodically paid Mr. Kettles $350. In January 2008, Chubb issued a check in the amount of $125,000 in settlement of Mr. Kettles’ claim. Respondent failed to inform Mr. Kettles that he received the check, and did not disburse any of the proceeds to Mr. Kettles. In response to numerous inquires from Mr. Kettles, respondent variously advised him that (1) the check had not come in, (2) Chubb was refusing to pay, (3) he was awaiting a hearing date, and (4) he was taking Chubb to court to recover interest.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2(a), 1.3, 1.4, 1.5(a)(b)(c), 1.15, 8.4(a), 8.4(b), 8.4(c), and 8.4(d).
 

 
 *976
 

 Count VI
 

 In 1997, James Dombrowski hired respondent to pursue a workers’ compensation claim. In October 2006, the Louisiana Workers’ Compensation Corporation (“LWCC”) issued a check in the amount of $155,642.26, made payable to Mr. Dom-browski and respondent. Respondent advised Mr. Dombrowski that he received the check and then deposited it into his trust account. Although Mr. Dombrowski made numerous requests for information concerning the check, respondent did not account to his client for the proceeds. Instead, respondent converted the proceeds to his own use.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15, 8.4(b), and 8.4(c).
 

 |
 
 ñCount VII
 

 In April 1994, Thomas Ricketts, Jr. hired respondent to pursue a workers’ compensation claim. In March 1997, LWCC issued a check in the amount of $40,421.83 made payable to Mr. Ricketts and respondent. In December 2006, LWCC issued a check in the amount of $82,973.40 made payable to Mr. Ricketts and respondent. Respondent did not inform Mr. Ricketts of either payment, and Mr. Ricketts received no portion of the proceeds from either check.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15, 8.4(b), and 8.4(c).
 

 Count VIII
 

 Respondent represented twenty professional football players in various workers’ compensation matters. Respondent did not release the files upon the termination of these representations and did not cooperate with successor counsel. In 2008, respondent was evicted from the property where he practiced law and maintained client files. Respondent’s landlord removed the client files and they were presumably destroyed.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15 and 1.16(d).
 

 Count IX
 

 In June 2007, respondent was charged in Cobb County, Georgia with possession of cocaine, DWI, and possession of an open container of alcohol while operating a moving vehicle. In September 2007, respondent pled guilty to possessing cocaine in violation of the Georgia Controlled Substances Act. He was sentenced as |7a first offender and placed on probation for two years. Respondent also pled guilty to driving under the influence of alcohol and was sentenced to twelve months incarceration. After serving 24 hours of the sentence, respondent was permitted to serve the remainder on probation, with conditions. However, respondent failed to fulfill the probationary conditions, and his probation was revoked in February 2008.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(b) and 8.4(d).
 

 DISCIPLINARY PROCEEDINGS
 

 In June 2009, the ODC filed nine counts of formal charges against respondent. Respondent was served with the formal charges via certified mail but failed to answer. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evi
 
 *977
 
 dence on the issue of sanctions. Respondent tiled a letter dated November 19, 2009, purporting to “submit [his] permanent resignation and withdrawal from the Louisiana Bar ...” While the letter stated there were some “errors in the allegations/charges,” the letter conveyed no request for the deemed admitted order to be recalled.
 

 Hearing Committee Report
 

 After considering the ODC’s deemed admitted submission, the hearing committee determined the facts alleged in the formal charges were deemed admitted and proven by clear and convincing evidence. Based on these facts, the committee |sfound respondent “engaged in a pattern of significant misconduct” for which he should be permanently disbarred.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s report.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board determined the hearing committee’s factual findings in this deemed admitted matter are supported by the factual allegations in the formal charges and/or by the evidence submitted in support of those allegations. The board further found that although the committee did not enumerate the specific Rules of Professional Conduct respondent violated, the committee was correct in its conclusion that respondent committed professional misconduct. Indeed, the board found the record amply shows that respondent violated the Rules of Professional Conduct as charged in the formal charges.
 
 [3]
 

 The board determined respondent knowingly and intentionally violated duties owed to his clients, the public, and the legal profession. He caused actual and serious injury. Based on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined disbarment is the baseline sanction.
 

 In aggravation, the board found prior disciplinary offenses,
 
 [4]
 
 a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law (admitted 1972), indifference to making restitution, and illegal | ^conduct, including use of controlled substances. The board found no mitigating factors present.
 

 Citing Guideline 1 of the permanent disbarment guidelines (repeated or multiple instances of intentional conversion of client funds with substantial harm), the board determined that respondent’s conduct warrants permanent disbarment. In further support of permanent disbarment, the board cited three cases in which this court has permanently disbarred attorneys who converted substantial amounts of client funds.
 
 [5]
 

 Under these circumstances, the board recommended respondent be permanently disbarred.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 
 *978
 
 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57.
 

 In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow | mirom the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations.
 
 In re: Donnan,
 
 01-3058 (La.1/10/03), 838 So.2d 715.
 

 The deemed admitted facts reveal respondent has, among other things, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and has converted client funds in the approximate amount of $728,000. Based on these facts, we find respondent has violated the Rules of Professional Conduct as alleged in the formal charges.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 The record supports a finding that respondent engaged in intentional misconduct. He violated duties owed to his clients, the public, and the legal profession, causing substantial actual harm. Considering the numerous aggravating factors present in this case, and the absence of mitigating factors, disbarment is clearly appropriate. However, in their respective reports, the hearing committee and l1Tthe disciplinary board have concluded that respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
 

 We agree. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might result in permanent disbarment. Respondent’s conduct falls squarely within the scope of Guideline 1, which provides that permanent disbarment may be appropriate for multiple instances of intentional conversion of client funds with substantial harm. Respondent intentionally converted client funds totaling in excess of $720,000. Restitution has not been made to any of these clients.
 

 Accordingly, respondent must be permanently disbarred.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of
 
 *979
 
 Robert L. Hackett, Louisiana Bar Roll number 6397, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent shall provide ac-countings and restitution to his clients subject of the formal charges and repay the Louisiana State Bar Association’s Client Assistance Fund any amounts paid to claimants on his behalf. ■ All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Chief Justice Kimball not participating in the opinion.
 

 [1]
 

 . Respondent has been ineligible to practice law since July 24, 2008 for failing to comply with mandatory continuing legal education requirements. He is also ineligible for failure to pay his bar dues and the disciplinary assessment and for failure to file a trust account disclosure form.
 

 [2]
 

 . In its report, the disciplinary board erroneously indicated that there is no subpart (d) in the current version of Rule 3.3. The board was apparently referring to a much earlier version of the rule.
 

 [3]
 

 . In Count VII, the board also found a violation of Rule 1.4, relating to the allegation of the formal charges that respondent failed to inform Mr. Ricketts of the issuance of the workers' compensation checks.
 

 [4]
 

 . In 1997, respondent was publicly reprimanded for filing a meritless and frivolous motion to dissolve a temporary restraining order.
 
 In re: Hackett,
 
 97-1197 (La. 10/17/97), 701 So.2d 920.
 

 [5]
 

 .See In re: Morphis,
 
 01-2803 (La.12/4/02), 831 So.2d 934;
 
 In re: Woods,
 
 04-1543 (La.10/29/04), 885 So.2d 551;
 
 In re: Hodge,
 
 08-2296 (La.2/6/09), 999 So.2d 1131.